## No. 5631.

## HOUSTON & TEXAS CENTRAL RAILWAY COMPANY *v.* TEXAS & PACIFIC RAILWAY COMPANY.

1. RAILROAD RESERVATION—DESCRIPTION.—The sufficiency of the description given in the map and designation of the land reservation of the Memphis, El Paso & Pacific Railway Company, filed in the general land office on the twentieth of June, 1857, and in the office of the district surveyor of Bexar land district on the seventeenth of February, 1857, has been repeatedly recognized by both the legislative and executive departments of the State.  It was not necessary to fix the locality of the reservation that a survey should be made, and description given of such reservation.  The description (which is contained in the opinion) identifies sufficiently the boundaries of the reservation.

2. VESTED RIGHTS—CONTRACT—CONSTITUTIONAL LAW.—The charter of the Memphis, El Paso & Pacific Railway Company, granted by act of the Legislature of Texas February 4, 1854, by which the land was

granted and the reserve created, and upon which the company acted and invested its capital, is a contract within the protection of that clause of the Constitution of the United States which declares that no State shall pass any law impairing the obligation of contracts. That contract was not affected by the provisions of section 5, article 10, of the Constitution of 1868.

APPEAL from Travis. Tried below before the Hon. A. S. Walker.

The trial judge filed the following conclusions of fact and of law:

It is agreed by the parties as follows: The Houston & Texas Central Railway Company v. the Texas & Pacific Railway Company. Three suits pending between the same parties transferred to and pending in the district court of Travis county, Texas, for land in the counties of Mitchell, Howard and Tom Green. The attorneys for the parties to the above causes hereby consent to the following facts and waive proof thereof on the trial of said causes except by this agreement.

1. That the Memphis, El Paso & Pacific Railway Company was duly organized under its charter, and by the performance of all other precedent conditions became entitled to the land reservation of sixteen miles granted in its charter, if the designation of the reservation as required in said charter was made in the manner required in the charter.

2. That the Texas & Pacific Railway Company, by contract and purchase in 1872, and by act of the Legislature of Texas of May 2, 1873, became the owner of the properties, franchises and rights including said land reservation of the Memphis, El Paso and Pacific Railway Company.

3. That all the lands in controversy in this suit within eight miles of the central line of the designation of the Memphis, El Paso and Pacific reservation as shown by the designation by map section number 2, filed in the general land office, and by the written designation filed in the office of the surveyor of Bexar Land District, and that the Texas & Pacific Railway Company, has received from the State patents for all of said lands. Plaintiff does not admit that said designation was sufficient.

4. That either party may read in evidence any printed copy of the charter, or any private act of the Legislature relating to any railroad corporation relevant to any question in issue with-

out offering a certificate or other evidence of the authenticity of such charter or act.

5. That all facts found to be true in the opinion of the Supreme Court of the United States, for the purposes of its decision of the case of Davis v. Gray, reported in the sixteenth volume of Wallace's Reports of the United States Supreme Court Decisions, are admitted to be true for the purposes of the trial of these cases in the district court of Travis county; except that the designation or recognition of said reservation shall not be proved as a fact by said case.

6. That locations and surveys of all the lands in controversy were made by the Houston & Texas Central Railway Company, by virtue of valid land certificates owned by it; that surveys of each section mathematically correct were made of each certificate, and the field notes having been properly recorded were in each instance, together with the certificates filed in the general land office within the time required by law and remain so on file unpatented. Said locations and surveys were made and filed as follows, to wit: Surveys in block 26 in Mitchell county were made in the year 1867, and the field notes thereof filed in the general land office in July and August, 1867. Surveys in block 97 were made in July, 1873, and filed in the general land office in August, 1873. Surveys in block 13 were made in January, 1873, and the field notes filed in the general land office in August, 1873. Surveys in block number 29 were made in June, 1873, and filed in the general land office in August, 1873. Surveys in block 28 were made in June, 1873, and filed in the general land office in August, 1873. The surveys for the Texas & Pacific Railway Company were all made in 1877. These patents were issued without notice to the Houston & Texas Central Railway Company, whose surveys had been platted on the maps of the general land office. The surveys of the Houston & Texas Central Railway were made by the land surveyors of the land district in which the land surveyed was situated.

1. The certificates by virtue of which surveys numbers forty-nine to ninety-one, in block twenty-six, were made for the Houston & Texas Central Railway Company, were returned to the general land office July 26, 1872, while the field notes thereof were returned in 1867.

2. February 17, 1857, the Memphis, El Paso & Pacific Railway Company filed in the district surveyor's office of Bexar land district, at San Antonio, a designation describing the recog-

nized line of the road of said company, through said district, as follows: Commencing on the boundary line between the Milam and Bexar land districts, State aforesaid, at a point due east of the southeast corner of survey number four, made in the name of James H. Carothers, according to the map and records of the Bexar land district in the general land office at Austin; thence in a straight line south seventy-seven minutes west, to a point eight miles due south of the southeast corner of the territory of New Mexico; thence due west to the Pecos river, the same being the western line of the Bexar land district.

3. June 20, 1857, a map of said designation was received and filed in the general land office. The map showed proper connections with the line of route of the road of said company from its eastern extremity, and it includes as part of the line that filed in the Bexar land district.

4. By actual survey, beginning at the southeast corner of New Mexico, as ascertained by the boundary commission, and running by reverse calls, the lines designated as in numbers two and three have been verified. The line so run identically with the designation forms the basis of the measurement each way (north and south) to make the sixteen miles reservation, and which belt so found and measured includes the land in dispute in this suit.

5. The map and documents relied on as evidencing a designation of the line of the road of the said railroad company, were deposited in the land office in 1857. They were found in said office in 1877, in proper file, and have remained there ever since. The attention of the officers of the land office was called to said documents, and the State officials recognizing them, patents were issued to the defendant company over the older locations and surveys of the plaintiff. The plaintiff's certificates and field notes were in the land office long prior to the location of the defendants.

6. The several acts of the Legislature on the subject (public and private), were read in evidence, and can be inserted if desired by the parties.

Upon these facts the court finds and holds as matters of law—

1. That the "recognition" made and designated in 1857 was a sufficient recognition under the law to validate or extend the reservation along it.

2. Thereby the lands were reserved from general location,

and such reservation was not destroyed by the State in opening reservation (either by Constitution or statute), and was existing at the date of the locations and surveys by the plaintiff upon the land sued for.

3. The locations and surveys (with return thereof, with certificates to the general land office) are not valid titles to the land covered by them against the rights of the defendant.

*H. D. Prendergast* and *D. H. Hewlett,* for appellant: The designation of the center line of the Memphis, El Paso & Pacific reservation made in 1857 from Morgan's branch on the Colorado river, through Bexar land district, was not sufficiently specified and certain to segregate the land, the sixteen miles reservation from the public domain and withdraw it from location and survey by other parties; because the said line was a mere paper designation for about two hundred miles without survey or call for objects; and this proposition is not intended to deny that the grant or reservation was good against the State as a contract and would be good against individuals, when the reservation should be sufficiently designated by description according to law and under the charter of the Memphis & El Paso Railroad. (Rinby v. Chambers, 15 Texas, 592; Weir v. Van Bibber, 34 Texas, 229; Johnson v. Parnell, 2 Wheaton, 208; McArthur v. Browder, 4 Wheaton, star page, 491.)

The Memphis, El Paso & Pacific reservation of sixteen miles wide, if it ever existed, west of Morgan's branch, was destroyed, and all laws granting said reservation, or extending it, passed before 1869, were repealed by section 5, article 10, of the Constitution and ordinances of the State of Texas adopted in 1869; because said Constitution and ordinances of 1869 were equivalent to office found against said reservation, and because said State of Texas had specially reserved the right to dispose of her public domain as she, the State, might direct, by the treaty of annexation between the United States and the Republic of Texas. (Charter of Memphis, El Paso & Pacific Railway Company, February 4, 1856, copied in Trans.; an act to define rights of the Texas & Pacific Railway Company in Texas, etc., copied in Trans. from special laws of Thirteenth Legislature, May 2, 1873; Smith v. State of Maryland, 6 Cranch, 286; Fairfax Devisee v. Hunter's Lessees, 7 Cranch, 603; United States **v.** Repentigby, 5 Wall., 267, 268; Louisiana v. Jumel, 107 U. S. Rep.,

711; Cunningham v. Macon & Brunswick Railway et als., 109 U. S. Rep., 445; Walsh v. Preston, 109 U. S., 267.

*Leake & Henry,* for appellee: That there was error of law in the conclusion of the court that the designation of the reservation line of the Memphis, El Paso & Pacific Railway Company, made in 1857, was a sufficient designation, because it was a mere paper designation, and no survey or field notes or land marks were ever made until after plaintiff's surveys were made until after plaintiff's surveys were made in 1873.

The written designation of the central line of its sixteen mile reservation from Morgan Branch, on the Colorado river, through the Bexar land district, filed by the Memphis, El Paso & Pacific Railway Company, in the office of the surveyor of the Bexar land district, on February 17, 1857, and in the general land office of the State, accompanied by a map, on the twentieth of June, 1857, was a sufficient designation of said reservation. (Charter of M., E. P. & P. R. R. Co., acts Feb. 4 and 5, 1856; Act Feb. 10, 1857: Act May 2, 1873; Kimmel v. Wheeler, 22 Texas, 77; Woods v. Durrett, 28 Texas, 429; Wright v. Hawkins, 28 Texas, 452; Johnson v. Eldridge, 40 Texas, 507; Davis v. Gray, 16 Wall.)

The reservation was not destroyed or repealed by the constitution of ordinances of 1869. (Authorities above cited.)

ACKER, JUDGE. Appellant brought this suit in trespass to try title to about one hundred sections of land which it claims by virtue of locations and surveys made in 1873 under valid land certificates issued to it. It was admitted that the surveys were made and field notes returned in the manner and within the time prescribed by law.

Appellee claims the land by virtue of the act of the Legislature of February 4, 1856, incorporating the Memphis, El Paso & Pacific Railway Company, subsequent acts of the Legislature relating to lands granted to railroad companies, and locations and surveys made for it under valid land certificates in 1877, upon which patents were issued.

It was admitted that all of the land lies within eight miles of the central line of the Memphis, El Paso & Pacific Railway Company's reservation, as shown by its designation and map filed in the general land office, and in the office of the district surveyor for Bexar land district.

It was also admitted that the appellee by contract and purchase in 1872, and by act of the Legislature of May 2, 1873, became the owner of the properties, franchises and rights, including the land reservation of the Memphis, El Paso & Pacific Railway Company. Appellant relies upon two points for reversal of the judgment, and contends:

1. That the description given of the reservation in the map and designation filed in the general land office, and in the office of the district surveyor of Bexar land district in 1857, is insufficient.

2. That the reservation was forfeited by the provision of section 5, article 10, of the Constitution of 1869.

The charter of the Memphis, El Paso & Pacific Railway Company, granted by act of the Legislature of February 4, 1854, contains the following provision:

"Section 15. * * * All the vacant public lands within eight miles on each side of the extension line of said road, shall be exempt from location or entry, from and after the time when such line shall be designated by survey, recognition or otherwise. The lands hereby reserved shall be surveyed by said company, at their expense, and the alternate or even sections reserved for the use of the State, and it shall be the duty of said company to furnish the district surveyor of each district through which said road may run, with a map of the track of said road, together with such field notes as may be necessary to the proper understanding and designation of the same."

On February 17, 1857, the Memphis, El Paso & Pacific Railway Company caused to be filed in the office of the district surveyor of Bexar land district a map and designation of the central line of its reservation through said district. The written designation notified the surveyor that the reservation included eight miles north and eight miles south of the designated line. The map and designation were also filed in the general land office on June 20, 1857. The central line of the reservation is described in the map and designation as follows: "Commencing on the boundary line between the Bexar and Milam land district at a point due east of the southeast corner of a survey of land number four, made in the name of James H. Carothers, according to the map and records of Bexar land district in the general land office; thence in a straight line south seventy-seven minutes west, to a point eight miles south of the southeast corner of New Mexico; thence due east to the Pecos river."

· The constitutional convention of 1869 adopted "an ordinance granting lands to purchasers, to actual settlers, and locators of genuine certificates within the limits of the Memphis, El Paso & Pacific Railway reserve," which the ordinance does not describe otherwise than by name.

The act of May 2, 1873, contains the following provisions:

· Section 5. That the public lands heretofore reserved from pre-emption, location and survey, for the benefit of the Memphis, El Paso & Pacific Railway Company, in what is known as the Memphis, El Paso & Pacific Railway reservation, and as designated by the maps, plats and field notes now on file in the general land office. Commencing on the eastern boundary line of the State, in Bowie county. and thence westwardly to the twenty-third meridian of longitude west from Washington, are hereby continued to be reserved from pre-emption, location or survey by the holder of any land certificate or other land claim, for the benefit of said Texas & Pacific Railway Company and for the benefit of the school fund; and, where the public lands therein have not already been sectionized, said company shall sectionize the same and return the field notes and maps to the general land office.   *   *   *   Provided, that nothing herein contained shall be so construed as to affect or impair the legal rights of third persons.

Section 6. That the said Memphis & El Paso reservation, from the twenty-third meridian of longitude from Washington to the Rio Grande river, as designated by the field notes, maps and reports from the different surveyors of the several land districts of the State, on file in the general land office, is hereby continued to be set aside and reserved from pre-emption, location and survey for the benefit of said Texas & Pacific Railway Company and the school fund.

The act proceeds to set aside an additional width of forty miles on each side of the center of the reservation, so as to make eighty miles from the twenty-third meridian west to a point south of the southeast corner of New Mexico and opposite, after passing that point the reservation of eighty miles is continued to the Rio Grande, bounded north by New Mexico; "the same to include the Memphis & El Paso reservation hereinbefore mentioned," to continue till 1880. "Provided, that nothing in this section shall impair or affect the rights of any person or persons heretofore legally acquired within said reservations."

The map and designation have been on file in the general

land office since 1857, and the sufficiency of the description of the reservation has been repeatedly recognized by both the legislative and executive departments of the government. The charter does not require a line to be run or surveys to be made as a condition precedent to the reservation taking effect, but expressly gives effect to the reservation from and after the time when such line shall be designated "by survey, recognition or otherwise." Had the Legislature intended that the line should be actually run before the reservation should take effect, it would not have authorized the line to be designated "by recognition or otherwise." The description given in the map and designation affords the information necessary for the exact location of the line and. identification of the boundaries of the reserve. We think the court did not err in holding that the description was sufficient.

The charter of the Memphis, El Paso & Pacific Railway Company, granted by act of the Legislature of February 4, 1854, in which the lands were granted and the reserve created, and upon which the company acted and invested its capital, is a contract within the protection of that clause of the Constitution of the United States which declares that no State shall pass any law impairing the obligation of contracts, and this contract was not affected by the provision of section five, article ten, of the Constitution of 1869. (Davis v. Gray, 16 Wall., 216.)

The judgment of the court below being in accord with the conclusions here expressed, we are of opinion that it should be affirmed.

*Affirmed.*